UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 13-00242 JGB (OPx)** | Date | January 13, 2014 |
|---|---|---|---|
| Title | *Robert McCrary v. The Elations Company, LLC* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings:     **Order (1) GRANTING Plaintiff's Motion for Leave to File Fourth Amended Complaint (Doc. No. 56) and (2) GRANTING Plaintiff's Motion for Class Certification (Doc. No. 48) (IN CHAMBERS)**

Before the Court are Plaintiff Robert McCrary's Motion for Leave to File Fourth Amended Complaint (Doc. No. 56) and Plaintiff's Motion for Class Certification (Doc. No. 48). After considering the papers timely filed in support of and in opposition to the motions and the arguments presented at the December 30, 2013 hearing, the Court GRANTS the motion to amend and GRANTS the motion for class certification.

## I.   BACKGROUND

### A.  Procedural History

Plaintiff Robert McCrary ("Plaintiff" or "McCrary") filed his putative class action Complaint in state court on December 31, 2012.  (Not. of Removal, Exh. A, Doc. No. 1.) Defendant The Elations Company, LLC ("Defendant") removed the action to this Court on February 7, 2013.  (Not. of Removal.)

Plaintiff filed a First Amended Complaint on February 27, 2013.  (FAC, Doc. No. 10.) Pursuant to Defendant's motion to dismiss, the Court dismissed Plaintiff's claims based on Defendant's advertising claims of "healthier joints," "joint comfort," "joint flexibility," "joint comfort in 6 days," and "Elations Clinically Proven Combination" with leave to amend.

("Order," Doc. No. 21.)  The Court found that Plaintiff's remaining claims were sufficiently pled.  (Order at 8.)  On May 3, 2013, Plaintiff filed his Second Amended Complaint, which Defendant moved to dismiss and strike.  (Doc. Nos. 26, 27.)  The Court granted the motions in part and dismissed some claims with and others without leave to amend.  (Doc. No. 36.)  Pursuant to the Court's order, Plaintiff filed the operative Third Amended Complaint on July 25, 2013.  ("TAC," Doc. No. 38.)  The TAC added named Plaintiff Denzel Doucette ("Doucette").  (Id.)  Defendant answered on August 20, 2013.  (Doc. No. 44.)

On October 14, 2013, Plaintiff filed a motion for class certification.  ("MCC," Doc. No. 48.)  In support of the motion, Plaintiff filed the declaration of Gillian L. Wade attaching 27 exhibits.  ("Wade Decl.," Doc. No. 49.)[1]  On November 12, 2013, Defendant filed its opposition to the motion for class certification ("MCC Opp'n," Doc. No. 68.) attaching the following documents:[2]

- Declaration of Michael Burton ("Burton Decl.," Doc. No. 68-1),
- Declaration of Sascha Henry ("Henry Decl.," Doc. No. 68-2) appending Exhibits A and B,
- Declaration of Ed Klene ("Klene Decl.," Doc. No. 68-3),
- Declaration of Shawntel Kolb ("Kolb Decl," Doc. No. 68-4) appending Exhibits 1 to 31,
- Declaration of Richard Levine ("Levine Decl.," Doc. No. 68-5),
- Declaration of Maxine Samuels ("Samuels Decl.," Doc. No. 68-6),
- Declaration of Robert Sarama ("Sarama Decl.," Doc. No. 68-7),
- Declaration of Laurie Schmidt ("Schmidt Decl.," Doc. No. 68-8),
- Declaration of Donna Shea ("Shea Decl.," Doc. No. 68-9),
- Declaration of Joann Watson ("Watson Decl.," Doc. No. 68-10), and
- Requests for Judicial Notice of Ten Exhibits ("RJN," Doc. No. 68-11).[3]

---

[1] Plaintiff applied to seal an unredacted version of its class certification motion and several of the exhibits attached to the Wade Declaration.  (Doc. Nos. 47, 50.)  Plaintiff also filed a notice of errata seeking to seal page five of Plaintiff's previously filed motion for class certification.  (Doc. No. 64.)  Pursuant to the discussion below, these applications are GRANTED.

[2] Defendant applied to seal unredacted versions of its opposition to the MCC, the Sarama Declaration, and the Kolb Declaration including all appended exhibits.  (Doc. Nos. 67, 69.)  Pursuant to the discussion below, these applications are GRANTED.

[3] Defendant asks the Court to take judicial notice of two internet articles, a Wikipedia entry, four journal articles, and three judicial opinions.  (RJN, Exhs. 1-10.)  While the court may take judicial notice of the fact that the internet, Wikipedia, and journal articles are available to the public, it may not take judicial notice of the truth of the matters asserted therein.  See Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.") (citation and quotation omitted).  Accordingly, the Court takes judicial notice of Exhibits 1-7 solely as an indication of what information is in the public realm.  The court GRANTS Defendant's request to take judicial (continued . . . )

---

On November 22, 2013, Plaintiff filed his reply in support of the MCC. ("MCC Reply," Doc. No. 72.) On December 3, 2013, Plaintiff objected to and moved to strike the Kolb Declaration and all appended exhibits. ("Kolb Obj.," Doc. No. 80.) The same day, Plaintiff objected to and moved to strike the Levine, Samuels, Schmidt, Shea, and Watson Declarations. ("Decl. Obj.," Doc. No. 81.) Paul Seeley and Matthew Holder filed declarations on behalf of Defendant responding to Plaintiff's objections to the declarations. ("Seeley Resp. Decl.," Doc. No. 83; "Holder Decl.," Doc. No. 84.)

On October 21, 2013, Plaintiff filed a motion for leave to file a Fourth Amended Complaint. ("MTA," Doc. No. 56.) In support of the motion to amend, Plaintiff filed a Declaration of Gillian L. Wade attaching two exhibits ("Wade Decl. Amend," Doc. No. 57) and its proposed Fourth Amended Complaint ("4AC," Doc. No. 58).[4] On October 28, 2013, Defendant opposed the motion to amend ("MTA Opp'n," Doc. No. 60), relying on the Declaration of Paul Seeley with Exhibits A through F attached ("Seeley Decl.," Doc. No. 60-1). On November 4, 2013, Plaintiff replied in support of his motion to amend. ("MTA Reply," Doc. No. 65.)

While these motions were pending, the parties filed a discovery motion before the magistrate judge wherein Plaintiff sought to de-designate particular documents Defendant turned over in discovery and designated as "Attorneys' Eyes Only." (Doc. No. 63.) On December 6, 2013, Magistrate Judge Oswald Parada denied Plaintiff's motion to de-designate the documents. ("Disc. Order," Doc. No. 86.)

Although the motion to amend was filed after the motion for class certification, the Court addresses the motion to amend first. The parties prepared their briefs and arguments pursuant to the MCC based on the claims and factual allegations proffered in the 4AC. Therefore, the Court first takes up whether leave to amend is appropriate, and if so, then addresses certification based on the claims presented in the 4AC.

## B. Factual History

The operative TAC states four claims for relief for: (1) violation of the Consumer Legal Remedies Act ("CLRA") under Cal. Civ. Code § 1750; (2) violation of the False Advertising Law ("FAL") under Cal. Bus. Prof. Code § 17500; (3) violation of the unfair and fraudulent

---

( . . . continued)

notice of Exhibits 8, 9, and 10, which are judicial opinions, and are not subject to reasonable dispute. See Wendt v. Smith, 273 F. Supp. 2d 1078, 1082 (C.D. Cal. 2003) (granting request to "take judicial notice of the various opinions of the U.S. District Court and unpublished opinions of the Ninth Circuit").

[4] Plaintiff applied to seal Exhibit 2 to the Wade Declaration submitted with the Motion to Amend, its Memorandum of Points and Authorities, and its Proposed Fourth Amended Complaint. (Doc. Nos. 54, 55.) Pursuant to the discussion below, these applications are GRANTED.

prongs of the Unfair Competition Law ("UCL") under Cal. Bus. Prof. Code § 17200; and (4) violation of the unlawful conduct prong of the UCL.  (TAC.)

According to the TAC, Defendant markets, distributes, and sells the Elations dietary joint supplement beverage and promotes it as "clinically proven" to have joint health benefits.  (TAC ¶ 1.)  However, Plaintiff contends that Elations is not clinically proven to have any impact on joints, and Elations' label was therefore false.  (TAC ¶ 2.)

Plaintiff McCrary suffers from arthritic joint pain.  (TAC ¶ 72.)  While shopping at CVS in August 2011, Plaintiff alleges he reviewed the packaging of Elations which included the claims that Elations contains a "clinically-proven formula" and a "clinically-proven combination" of ingredients.  (TAC ¶ 73.)  In reliance on these claims, he purchased Defendant's product, followed all of the instructions, and used it as directed, but he did not receive the advertised benefits.  (TAC ¶¶ 74-75.)  Plaintiff claims that he would never have purchased the product had he known of its ineffectiveness.  (TAC ¶ 76.)  Plaintiff brings the action on behalf of a class of similarly situated persons, as discussed more fully below.

## II.  LEGAL STANDARD[5]

### A.  Leave to Amend

Federal Rule of Civil Procedure 15 provides that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'"  Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)).  Leave to amend is not automatic, however.  The Ninth Circuit considers a motion for leave to amend under five factors:  bad faith, undue delay, prejudice to the opposing party, the futility of amendment, and whether the plaintiff has previously amended his or her complaint.  Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004).  The Ninth Circuit has held that "it is the consideration of prejudice to the opposing party that carries the greatest weight."  Eminence Capital, 316 F.3d at 1052.  Further, the Ninth Circuit "differentiate[s] between pleadings attempting to amend *claims* from those seeking to amend *parties*.  Amendments seeking to add claims are to be granted more freely than amendments adding parties."  Union Pac. R. Co. v. Nevada Power Co., 950 F.2d 1429, 1432 (9th Cir. 1991) (citing Miles v. Dep't of Army, 881 F.2d 777, 782 (9th Cir. 1989); contra DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir.1987) ("[L]iberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties.").

"The party opposing amendment bears the burden of showing prejudice, unfair delay, bad faith, or futility of amendment."  United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co., No. CV 08-2068

---

[5] Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

PSG (FFMx), 2009 WL 650730, at *2 (C.D. Cal. Mar. 12, 2009) (citing Eminence Capital, 316 F.3d at 1052; DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186-87 (9th Cir. 1987)).

### B. Class Certification

Federal Rule of Civil Procedure 23 governs class actions. Fed. R. Civ. P. 23. A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)). The party may not rest on mere allegations, but must provide facts to satisfy these requirements. Doninger v. Pac. Northwest Bell, Inc., 564 F.2d 1304, 1309 (9th Cir. 1977) (citing Gillibeau v. Richmond, 417 F.2d 426, 432 (9th Cir. 1969)). Although not mentioned in Rule 23(a), the moving party must also demonstrate that the class is ascertainable. Keegan v. Am. Honda Motor Co., Inc., 284 F.R.D. 504, 521 (C.D. Cal. 2012).

After satisfying the five prerequisites of numerosity, commonality, typicality, adequacy, and ascertainability, a party must also demonstrate either: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; or (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. Fed. R. Civ. P. 23(b)(1–3).

The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. Bateman v. American Multi–Cinema, Inc., 623 F.3d 708, 712 (9th Cir. 2010). However, a party seeking class certification must affirmatively demonstrate compliance with Rule 23—that is, the party must be prepared to prove that there are in fact sufficiently numerous parties and common questions of law or fact. Wal–Mart Stores, Inc. v. Dukes, __ U.S. __, 131 S. Ct. 2541, 2550, 2551 (2011). This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id.

### III. DISCUSSION

### A. Leave to Amend

Plaintiff seeks leave to file a Fourth Amended Complaint. The proposed 4AC deletes Plaintiff Denzel Doucette as a named class member, omits claims from the website as a basis for the UCL and CLRA claims, amends the class definition, and adds facts regarding why Defendant's "clinically-proven" claims are false. The 4AC does not add any parties, causes of action or theories of liability. As of the date of the MTA, no deadline to amend had been set and discovery is ongoing.

---

Defendant does not argue that any of the factors weigh against granting Plaintiff leave to amend. Since there has been no showing of bad faith, undue delay, prejudice to the opposing party, or futility of amendment, the Court finds that the "presumption under Rule 15(a) in favor of granting leave to amend" applies and amendment is proper. Eminence Capital, 316 F.3d at 1052.

### 1. Meet and Confer

Instead of substantively opposing amendment, Defendant argues that Plaintiff failed to meet and confer in accordance with Local Rule 7-3 because Plaintiff's counsel provided Defendant's counsel an earlier draft of the 4AC, which was different from the 4AC submitted with the MTA. (MTA Opp'n at 1-2.) Local Rule 7-3 requires that "[c]ounsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, *preferably in person*, the substance of the contemplated motion and any potential resolution." L.R. 7-3. Nowhere does the rule require the moving party to provide a draft of the proposed complaint to opposing counsel. Thus, Plaintiff's failure to provide the exact draft it filed with the Court does not violate Local Rule 7-3. Opposition to the MTA on this basis is frivolous.

### 2. Prior False Allegations

Alternatively, Defendant appears to contend that the Court should deny amendment because the allegations in the 4AC explicitly or implicitly admit that prior allegations in the TAC were false. (MTA Opp'n at 2-4.) However, an amended pleading supersedes earlier pleadings, such that statements in earlier pleadings are not admissions. See Sicor Ltd. v. Cetus Corp., 51 F.3d 848, 859-60 (9th Cir. 1995). "The short of it is that there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations." PAE Gov't Servs., Inc. v. MPRI, Inc., 514 F.3d 856, 860 (9th Cir. 2007). Thus, barring any allegation of bad faith which Defendant does not make, the purportedly inconsistent allegations between the TAC and 4AC are not a basis for denying amendment. See id. at 858-59 ("At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations, laches, the need to preserve evidence and other such concerns. . . . Parties usually abandon claims because, over the passage of time and through diligent work, they have learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities. We do not call this process sham pleading; we call it litigation.").

### 3. Sealed 4AC

In the 4AC, Plaintiff alleges that there are three active ingredients in Elations: glucosamine hydrochloride ("GH"), chondroitin sulfate ("CS"), and boron. (4AC ¶ 1.) Through its advertising and marketing, Elations allegedly links its ingredients to the signs and symptoms of osteoarthritis ("OA"), a disease causing joint pain and stiffness. (4AC ¶ 38.) Further, Elations promises it is a "clinically-proven" formula and combination of ingredients that will improve joint health. (4AC ¶ 37.) To support these claims, Plaintiff contends that Defendant relies on research which tests different ingredients than those in Elations (i.e., crystalline glucosamine

sulfate ("CGS")), and the studies which actually test GH and CS establish that it is no more effective than a placebo.  (4AC ¶¶ 43-60.)  Plaintiff further alleges that two clinical studies which Defendant conducted on Elations in 2002 and 2008 were either flawed in their design or prove that Elations did not make a difference.  (4AC ¶¶ 61-68.)  Thus, Plaintiff concludes that "Defendant has no clinical tests that prove the combination of glucosamine, chondroitin, and boron in Elations is capable of or effective in improving joint health or comfort, and Defendant's 'clinically-proven' claims are literally false because no such clinical proof exists."  (4AC ¶ 62.)

Only the allegations pertaining to Defendant's 2002 and 2008 internal clinical studies are new to the 4AC.  Defendant produced these studies in discovery, and Plaintiff was previously unaware that Defendant conducted any testing on its product.  (MTA at 1-2.)  Defendant marked the clinical trials "Confidential—Attorneys' Eyes Only" pursuant to the parties' stipulated protective order ("PO," Doc. Nos. 41, 43).  Judge Parada upheld the protected status given to these documents because they "reveal the conclusions of the studies, and the protocols and statistical analyses used in reaching those conclusions," and "Defendant's competitors . . . would be able to use the research methods and analyses to reach conclusions without the expenditure of resources Defendant incurred."  (Disc. Order at 5.)  Based on the protection afforded to the clinical studies, the parties request the continued redaction of the 4AC, omitting any reference to the clinical studies.  (MTA Opp'n at 5-6.)

There is a strong presumption against filing documents under seal.  See Kamakana v. City & Cnty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006) (discussing the "strong presumption in favor of access" to court records) (quotation omitted).  "[T]he strong presumption of access to judicial records applies fully to dispositive pleadings, including motions for summary judgment and related attachments."  Id. at 1179.  The Ninth Circuit "adopted this principle of disclosure because the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the public's understanding of the judicial process and of significant public events."  Id. (internal quotation marks omitted).  A party must present "compelling reasons" to seal judicial records attached to a dispositive motion.  Id. at 1178-79.  Compelling reasons exist when "court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets."  In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig., 686 F.3d 1115, 1120 (9th Cir. 2012) (citation and quotation omitted).

The Ninth Circuit, however, has "'carved out an exception to the presumption of access' to judicial records for a *'sealed discovery document* [attached] to a *non-dispositive* motion,' such that 'the usual presumption of the public's right of access is rebutted.'"  Kamakana, 447 F.3d at 1179 (internal citations omitted) (emphasis in original).  Thus, a "particularized showing," under the "good cause" standard of Rule 26(c) will "suffice[ ] to warrant preserving the secrecy of sealed discovery material attached to non-dispositive motions."  Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135, 1138 (9th Cir. 2003).  "A 'good cause' showing will not, without more, satisfy a 'compelling reasons' test."  Kamakana, 447 F.3d at 1180.

"Under the Ninth Circuit's jurisprudence in Kamakana, a request to seal all or part of a complaint must clearly meet the 'compelling reasons' standard and not the 'good cause' standard.  In re NVIDIA Corp. Derivative Litig., C 06-06110 SBA, 2008 WL 1859067, at *3

(N.D. Cal. Apr. 23, 2008).  While a complaint is not, per se, dispositive, "it is the root, the foundation, the basis by which a suit arises and must be disposed of."  Id.  As the Ninth Circuit held in Kamakana, "the resolution of a dispute on the merits . . . is at the heart of the interest in ensuring the public's understanding of the judicial process and of significant public events." Kamakana, 447 F.3d at 1179.  "Likewise, when a plaintiff invokes the Court's authority by filing a complaint, the public has a right to know who is invoking it, and towards what purpose, and in what manner."  In re NVIDIA, 2008 WL 1859067 at *3.  Thus, the Court concludes a request to seal all or part of a complaint must meet the "compelling reasons" standard and not the "good cause" standard.  See also Dunbar v. Google, Inc., 12–3305, 2013 WL 4428853 (N.D. Cal. Aug. 14, 2013); Nucal Foods, Inc. v. Quality Egg LLC, 10–3105, 2012 WL 260078 (E.D. Cal. Jan. 27, 2012); TriQuint Semiconductor, Inc. v. Avago Technologies Ltd., 09–1531, 2010 WL 2474387 (D. Ariz. June 11, 2010).

Here, the parties rely on the good cause standard to support their requests to seal portions of the 4AC.  Good cause is insufficient to justify sealing portions of the complaint.  See Nucal Foods, 2012 WL 260078 at *2.  Similarly, the parties' reliance on the stipulated protective order is insufficient to establish compelling reasons.  Foltz, 331 F.3d at 1136.  The Court agrees with the reasoning and findings in the Discovery Order and affirms the confidential designation assigned to the clinical studies.  (Disc. Order at 5-6.)  However, the 4AC does not reveal any particulars of the protocols, analyses, or research methods employed in the clinical studies and thus would be of no use to Defendant's competitors.  Therefore, the rationales underlying continued confidentiality of the studies do not apply to the redaction of the 4AC.  The Court has reviewed and compared the redacted and unredacted versions of the 4AC and cannot find that it reveals any sensitive information which could become a "vehicle for an improper purpose." Kamakana, 447 F.3d at 1179.  In requesting to seal portions of the 4AC, the parties failed to pinpoint "articulable facts identifying the interests favoring continued secrecy . . . and show that these specific interests overcame the presumption of access by outweighing the public interest in understanding the judicial process."  Kamakana, 447 F.3d at 1181 (citation and quotation omitted).  Accordingly, the Court DENIES the parties' requests to seal portions of the 4AC.[6]

Based on the foregoing, the Court GRANTS Plaintiff leave to publicly file the 4AC.  For purposes of the motion for class certification, considered below, the Court treats the proposed

---

[6] Although the Court declines to permit the sealing of the 4AC, the same analysis does not apply to the parties' applications to seal documents submitted in support of and in opposition to the MTA and MCC.  (Doc. Nos. 47, 50, 54, 55, 67, 64, 69.)  Plaintiff's motions to amend and for class certification are not dispositive, and thus the good cause standard generally applies.  See Dunbar v. Google, Inc., 5:12-CV-003305-LHK, 2012 WL 6202719, at *2 (N.D. Cal. Dec. 12, 2012) (motion for leave to amend); Rich v. Hewlett-Packard Co., No. 06-03361, 2009 WL 2168688 (N.D. Cal. Jul. 20, 2009) (motion for class certification).  Moreover, the sealed exhibits directly implicate the rationales justifying secrecy identified in the Discovery Order.  Thus, the Court GRANTS the parties' applications to seal documents filed in support of and in opposition to the motions.

4AC as the operative complaint and addresses certification based on the claims and factual allegations asserted therein.[7]

## B. Class Certification

Plaintiff moves to certify a class pursuant to Rules 23(a) and 23(b)(3) of "all persons residing in the state of California who purchased Elations, since January 28, 2009, for personal use and not for resale, when the following claims were on the packaging and/or labeling of Elations: 'clinically-proven combination' and/or 'clinically-proven formula.'" (MCC at 12.) Plaintiff bears the burden of demonstrating that class certification is proper. Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).

### 1. Rule 23(a)

#### a. Ascertainability

A class is ascertainable if it is "administratively feasible for the court to determine whether a particular individual is a member" using objective criteria. Keegan v. Am. Honda Motor Co., Inc., 284 F.R.D. 504, 521 (C.D. Cal. 2012) (citation omitted). Plaintiff contends that the class definition objectively depicts who is bound and proposes that class members self-identify their inclusion via affidavits. (MCC at 13-14 n.15.)

Defendant contends that the class is not ascertainable because there is no objective way to identify the individual members of the class, as it does not have any records identifying consumers of Elations – an over-the-counter supplement sold in retailers throughout the state. (MCC Opp'n at 5-6.) Defendant further contends that allowing class members to self-identify violates its due process right to raise individual challenges to class members. (Id. at 7.)

Essentially, Defendant's concern is that class members do not have actual proof that they belong in the class. If Defendant's argument were correct, "there would be no such thing as a consumer class action." Ries v. Arizona Beverages USA LLC, 287 F.R.D. 523, 535 (N.D. Cal. 2012) (finding ascertainability satisfied where class members were required to self-identify that they purchased iced tea with "natural" on the label during the class period). The class definition is sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member. "Indeed, the proposed class definition simply identifies purchasers of Defendant's products that included the allegedly material misrepresentations. Because the alleged misrepresentations appeared on the actual packages of the products purchased, there is no concern that the class includes individuals who were not exposed to the misrepresentation." Astiana v. Kashi Co., 291 F.R.D. 493, 500 (S.D. Cal. 2013) (finding a class of customers who purchased Kashi products during the class period that were labeled as containing "Nothing Artificial" to be ascertainable and rejecting argument that because "Defendant does not have

---

[7] Based on the arguments presented in the briefing on class certification, the parties appear to have proceeded on the assumption that leave to file the 4AC would be granted.

records of consumer purchases, and potential class members will likely lack proof of their purchases, . . . the Court will have no feasible mechanism for identifying class members").

Defendant's concern that it will be deprived of its due process right to defend against claims of class membership, such as by challenging a class member's actual purchase of the product or their failure to remember the Elations' label, is equally unavailing. (MCC Opp'n at 7-9.) To support this argument, Defendant relies on Carrera v. Bayer Corp., 727 F.3d 300 (3d Cir. 2013), where the Third Circuit vacated certification of a class of Florida purchasers of WeightSmart on ascertainability grounds because defendant would not "be able to test the reliability of the evidence submitted to prove class membership." Id. at 307. Essentially, as Plaintiff admits, Carerra eviscerates low purchase price consumer class actions in the Third Circuit. It appears that pursuant to Carerra in any case where the consumer does not have a verifiable record of its purchase, such as a receipt, and the manufacturer or seller does not keep a record of buyers, Carerra prohibits certification of the class. While this may now be the law in the Third Circuit, it is not currently the law in the Ninth Circuit. See Astiana, 291 F.R.D. at 500; Ries, 287 F.R.D. at 536; Wolph v. Acer Am. Corp., 272 F.R.D. 477, 482 (N.D. Cal. 2011); Zeisel v. Diamond Foods, Inc., C 10-01192 JSW, 2011 WL 2221113, at *6 (N.D. Cal. June 7, 2011). In this Circuit, it is enough that the class definition describes "a set of common characteristics sufficient to allow" a prospective plaintiff to "identify himself or herself as having a right to recover based on the description." Moreno v. AutoZone, Inc., 251 F.R.D. 417, 421 (N.D. Cal. 2008) (citation and internal quotations omitted). As discussed above, the class definition clearly defines the characteristics of a class member by providing a description of the allegedly offending product and the eligible dates of purchase. A prospective plaintiff would have sufficient information to determine whether he or she was an Elations customer who viewed the specified label during the stated time period. "[T]o the extent [Defendant] has individualized defenses, it is free to try those defenses against individual claimants." Johns v. Bayer Corp., 280 F.R.D. 551, 560 (S.D. Cal. 2012); see also Johnson v. Gen. Mills, Inc., 276 F.R.D. 519, 524 (C.D. Cal. 2011) ("If Mr. Johnson establishes liability for the class, Defendants may challenge reliance and causation individually during a determination of damages, after the issues that are common have been litigated and resolved.").

Moreover, the fact that particular persons may make false claims of membership does not invalidate the objective criteria used to determine inclusion. Defendant points to the testimony of former Plaintiff Doucette who testified that he purchased Elations, but after further questioning at deposition, it was revealed he purchased another product. Defendant points to Doucette to argue that class members may not remember whether they purchased the product at issue, and the joint supplement market is crowded which may further confuse potential class members. Courts in this district have rejected this argument on the grounds that sufficient notice can cure confusion and these issues may be addressed later in the litigation. In Galvan v. KDI Distribuation Inc., SACV 08-0999-JVS ANX, 2011 WL 5116585 (C.D. Cal. Oct. 25, 2011), the court certified a class of purchasers of pre-paid calling cards over defendant's objection that "most customers discard calling cards after use" and "customers likely will not remember where they purchased a card, and likewise, [defendant] does not know to whom these cards were sold." Id. at *3. The court responded to defendant's argument by acknowledging that "while [defendant] cannot directly identify the class members, it can . . . identif[y] the retailers who sold its cards." Id. at *4. Similarly, here, Defendant can identify the retailers who sold its product.

(Burton Decl. ¶ 2.)  Like in <u>Galvan</u>, once Defendant's "records establish which retailers sold [Elations] during the class period, class notice will further help reveal the class members."  <u>Id.</u> In addition, Defendant's contentions regarding a crowded market appear overstated. Defendant's Marketing Director stated that many of the joint supplements which likely competed with Elations were sold "in a pill form," and of the beverage options, many "vary by the additional factor of flavor."  (Burton Decl. ¶ 9.)  The product involved in this action was not available in pill form, nor has it ever been sold or manufactured in flavors.  (<u>Id.</u> ¶¶ 8, 9.) Accordingly, proper notice regarding the form of the product and its characteristics may help reduce consumer confusion regarding class membership.

In addition, Defendant argues that there is no precise time period when all class members purchased Elations with the "clinically-proven" labels.  (<u>Id.</u> at 6.)  Although the challenged language was on the Elations label from January 28, 2009 through August 26, 2010, Defendant did not recall or re-label existing products once the label change was made.  (Burton Decl. ¶¶ 5-6.)  The fact that the allegedly false representation was not on every available product during the class period does not defeat ascertainability.  <u>See</u> <u>Zeisel</u>, 2011 WL 2221113, at *6.  However, since the label change occurred over three years ago, it is unlikely that any packaging containing the "clinically-proven" claims remains on store shelves.  Moreover, Elations has a "two year shelf life from the date of bottling," therefore any remaining product should have been removed due to expiration.  (Burton Decl. ¶ 5.)  Accordingly, the Court finds it is necessary to limit the class definition to include purchasers of Elations between May 28, 2009 and December 26, 2012.[8]  <u>See</u> <u>Mazur v. eBay Inc.</u>, 257 F.R.D. 563, 568 (N.D. Cal. 2009) (noting that "the court has the power to modify proposed class definitions to make them sufficiently definite").

With this limitation on the class period, the Court finds the class is ascertainable.

### b. Numerosity

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable.  <u>See</u> Fed. R. Civ. P. 23(a)(1).  Here, the proposed California class is sufficiently numerous.  During the unamended class period, Defendant shipped 615,623 units of Elations to locations in California.  (Wade Decl., Exh. 25.)  Thus, it is reasonable to estimate that there are thousands of potential class members in California.  Defendant does not challenge Plaintiff's calculations, and the unrefuted evidence demonstrates that the numerosity requirement is satisfied.  <u>See</u> <u>Guido v. L'Oreal, USA, Inc.</u>, 284 F.R.D. 468, 476 (C.D. Cal. 2012) (finding numerosity satisfied where an estimated 800,000 units of the product were sold in the state during the class period).

---

[8] At the hearing, Plaintiff agreed that this limitation to the class period is appropriate. Plaintiff suggested the stated dates because Elations with the "clinically proven" packaging became available in California stores in May 2009, four months after the packaging was initially produced by Defendant, and remained available until December 2010. After adding in the two year shelf life, class members could have purchased Elations with the "clinically-proven" labels through December 2012.

### c. Commonality

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." Wal–Mart, 131 S. Ct. at 2551. The "claims must depend on a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. Commonality is satisfied by "the existence of shared legal issues with divergent factual predicates" or a "common core of salient facts coupled with disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019–20 (9th Cir. 1998).

Plaintiff has identified legal issues common to the putative class claims, namely whether the claims on Elations' packaging that it contains a "clinically-proven combination" and/or a "clinically-proven formula" are material and false. (MCC at 15.) By definition, class members were exposed to these labeling claims, creating a "common core of salient facts." Hanlon, 150 F.3d at 1019–20. Defendant does not challenge the commonality requirement under Rule 23(a)(2), and "[c]ourts routinely find commonality in false advertising cases that are materially indistinguishable from this matter." Astiana, 291 F.R.D. at 501 (citing Ries, 287 F.R.D. at 537); Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 377 (N.D. Cal. 2010); In re POM Wonderful LLC Marketing & Sales Practices Litig., No. ML 10–02199, 2012 WL 4490860, at *1 (C.D. Cal. Sept. 28, 2012) (certifying a class in an action alleging violations of the UCL, FAL, and CLRA arising out of marketing regarding the health benefits of pomegranate juice)).

The Court therefore finds Plaintiff satisfied the commonality requirement under Rule 23(a)(2).

### d. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Wolin v. Jaguar Land Rover North Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (quoting Hanon, 976 F.2d at 508). Thus, typicality is satisfied if the plaintiff's claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.

Plaintiff contends his claims are typical of those of the class because he purchased Elations believing it was proven to reduce his joint pain. ("McCrary Depo." 54:12-16, 56:22-25, 57:11-15, 67:15-24, Wade Decl., Exh. 4.) If Plaintiff had known that Elations was not clinically proven to help with his joint pain, he would not have purchased it. (Id. 86:15-87:9, 92:13-19.) These factual circumstances demonstrate that Plaintiff's claims are "reasonably co-extensive" with unnamed class members. See In re POM Wonderful, 2012 WL 4490860 at *6 (finding typicality where "the named Plaintiffs, like the absent members of the class, relied upon Pom's

representations and made a purchase they otherwise would not have made"). Further, Plaintiff alleges to have suffered the same type of economic injury and seeks the same type of damages as the putative class members, namely a refund of the purchase price. (McCrary Depo. 100:11-14, 118:12-119:4.) As such, Plaintiff's interests "align[ ] with the interests of the class." Wolin, 617 F.3d at 1175; see, e.g., Astiana, 291 F.R.D. at 502; Guido, 284 F.R.D. at 479.

Defendant argues Plaintiff is not typical because he is subject to a unique defense based on his medical history. (MCC Opp'n at 22-23.) Specifically, Defendant points out that Plaintiff took Vicodin while he took Elations, which may have interfered with Elations' effectiveness in improving his joints. (Id.) Other courts in this Circuit have rejected similar arguments. See Zeisel, 2011 WL 2221113 at *8 ("Based on Zeisel's theory of the case, namely that the Shelled Walnut Products were misbranded and misleading, the Court concludes that his claims—notwithstanding his medical condition—are 'reasonably co-extensive with those of absent class members.'"). Moreover, "[i]n determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff." Simpson v. Fireman's Fund Ins. Co., 231 F.R.D. 391, 396 (N.D. Cal. 2005) (citation omitted). Thus, the central focus of the typicality analysis is that Plaintiff and the putative class claim Defendant labeled Elations with a claim of clinical proof knowing it was false. Moreover, the defense raised against Plaintiff is not "[a]typical of the defenses which may be raised against other members of the proposed class," as it is likely many other Elations' users took other medications and/or suffer from other illnesses. Hanon, 976 F.2d at 508; see also Ellis, 657 F.3d at 984. Accordingly, this potentially common defense does not render Plaintiff atypical.

In footnotes, Defendant raises the argument that customers who bought Elations online must be excluded from the proposed class. (MCC Opp'n 6 n.3, 11 n.4.) The Court agrees, but for reasons other than those offered. First, the proposed class definition requires that the putative member be exposed to the "packaging and/or labeling of Elations." Most, if not all, online consumers would not have seen the packaging or labeling on the product prior to purchase. This is particularly likely here where the "clinically-proven" claims were printed on "shrink wrap packaging" surrounding the Elations bottles. (Burton Decl. ¶ 5.) Thus, online consumers would not share a common injury with members of the class. Even if the websites offering Elations presented similar clinical proof claims in their marketing or description of the product, this would be insufficient because Plaintiff did not view any claims made on the website, nor did he purchase the product online.[9] Therefore, Plaintiff is not typical of putative class members who purchased Elations online. See Wiener v. Dannon Co., Inc., 255 F.R.D. 658, 666 (C.D. Cal.

---

[9] It is notable that Plaintiff has not presented any evidence demonstrating that the clinical proof claims available on Elations' packaging and label were identical or similar to those published online during the class period. Thus, "while [McCrary] has an incentive to prove [t]he alleged deception surrounding [Defendant's labeling claims], []he has no incentive to go further" and prove the alleged deception surrounding the claims presented on Elations' website. Wiener, 255 F.R.D. at 666-67. Plaintiff has not presented sufficient evidence to demonstrate that the clinical proof claims on Elations' packaging are "so interrelated" to relieve doubts that the interests of putative online consumers "will be fairly and adequately protected in their absence." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158 (1982).

2009) ("Because Wiener has purchased only Activia and has never purchased DanActive, the claims of the unnamed plaintiffs who purchased DanActive are not 'fairly encompassed by [Wiener's] claims.'") (citation omitted).  Online consumers therefore must be excluded from the class definition.

With the exclusion of online consumers, the typicality requirement is satisfied.

### e. Adequacy

Finally, under Rule 23(a)(4), the named plaintiff must be deemed capable of adequately representing the interests of the entire class, including absent class members.  See Fed. R. Civ. P. 23(a)(4) (requiring "representative parties [who] will fairly and adequately protect the interests of the class").  The adequacy inquiry turns on: (1) whether the named plaintiff and class counsel have any conflicts of interest with other class members and (2) whether the representative plaintiff and class counsel can vigorously prosecute the action on behalf of the class.  See Ellis, 657 F.3d at 985.

Defendant does not oppose certification based on inadequacy.  Plaintiff states that he does not have any interests antagonistic to the remainder of the class, nor does his counsel have any conflicts with the putative class.  (Wade Decl. ¶ 35.)  Plaintiff is an adequate class representative because he has personal experience with the claims of the lawsuit and is familiar with the underlying facts.  (McCrary Depo. 105:14-18.)  Plaintiff commits to actively participating in the litigation to its resolution.  (Id. 119:18-120:3, 137:2-138:1.)  Plaintiff's counsel, Milstein Adelman, LLP, is an experienced class action firm that has participated in many cases similar to the present action and has the resources and intent to vigorously prosecute this action.  (Wade Decl. ¶¶ 30-34.)

Accordingly, the Court concludes that the class representative and class counsel are adequate.

### 2. Rule 23(b)(3)

Of the three possible bases for certification under Rule 23(b), Plaintiff seeks certification under Rule 23(b)(3) which requires that "the questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

### a. Predominance

Plaintiff moves to certify the class based on Defendant's liability under the UCL, FAL, and CLRA.  (MCC at 19-23.)  The analysis under Rule 23(b)(3) "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)."  Hanlon, 150 F.3d at 1022.  "Rule 23(b)(3) focuses on the relationship between the common and individual issues."  Id.  Class certification under Rule 23(b)(3) is proper when common questions present a significant portion of the case and can be resolved for all members of the class in a single

adjudication.  Id.  Defendant argues certification is improper because individual issues predominate over any common issues.

### i.  Standing, Materiality, and Reliance

Defendant makes several arguments contending that unnamed class members may lack standing or fail to satisfy elements of the UCL, FAL, or CLRA.  Defendant contends that the Court must make individual determinations of whether each member actually viewed the "clinically proven" claim, that such statements were material to the class members' purchase of Elations, and that the consumers actually believed the product was ineffective and caused them damage.  (MCC Opp'n at 11-16.)

As discussed above, the class definition presupposes exposure to the clinical proof claims.  Any person who did not view the claims is not a class member and cannot raise any individualized issues.  Moreover, a presumption of exposure is inferred where, as here, the alleged misrepresentations were on the outside of the packaging of every unit for an extended period.  See Johns, 280 F.R.D. at 558 ("[E]veryone who purchased the Men's Vitamins would have been exposed to the prostate claim that appeared on every package from 2002 to 2009."); Wiener, 255 F.R.D. at 669 ("[T]he record clearly establishe[d] that [the defendant]'s alleged misrepresentations regarding the clinically proven health benefits of the [yogurt] [were] prominently displayed on all of the [yogurt]'s packaging[.]").  The fact that some of the packaging after August 2010 may not have included the clinical proof claims does not alter the presumption of exposure.  See Johnson, 275 F.R.D. at 288-89 ("General Mills' argument is unpersuasive that individual issues predominate because purchasers of YoPlus have been exposed to different mixes of packages and advertisements since General Mills has, over time, modified the packaging of YoPlus and the content and emphasis of its marketing materials.").  The case Defendant cites to support its argument that Plaintiff must proof each class member had individualized exposure is distinguishable.  In Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 595 (9th Cir. 2012), the Ninth Circuit held that a "presumption of reliance does not arise when class members 'were exposed to quite disparate information from various representatives of the defendant.'"  Id. at 596 (internal citation omitted).  In that case, plaintiff alleged misrepresentations in a brochure and television ads touting the benefits of a technology package available on certain Honda models to which few class members could have been exposed.  The Ninth Circuit reasoned that "the limited scope of that advertising makes it unreasonable to assume that all class members viewed it."  Id. at 595.  Defendant does not argue, nor could it, that its clinical proof claims were of limited scope, since it placed them on the packaging of every unit of Elations sold over an 18-month period.  The factual dissimilarity of Mazza renders it inapplicable.[10]  Cf. Pfizer Inc. v. Superior Court, 182 Cal. App. 4th 622, 631-32 (2010)

---

[10]  Mazza is also distinguishable because the accused advertisements "were allegedly misleading because of the information they omitted, rather than the information they claimed, and that while the omitted information may have been available, there was no evidence that customers received it."  Mazza, 666 F.3d at 595.  Here, the alleged liability does not stem from omissions in select advertisements used to promote a single feature on a car, but rather from (continued . . . )

(rejecting certification of purchasers of Listerine in California during a six-month period because "of 34 different Listerine mouthwash bottles, 19 never included any label that made any statement comparing Listerine mouthwash to floss" and "not every bottle shipped between June 2004 and January 2005 bore such a label").

In the Ninth Circuit, "standing is satisfied [under the UCL and FAL] if at least one named plaintiff meets the requirements . . . . Thus, we consider only whether at least one named plaintiff satisfies the standing requirements." Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1021 (9th Cir. 2011); see also Kwikset Corp. v. Sup. Ct., 51 Cal.4th 310, 328–29 (2011) (holding alleged false information on labels sufficient for standing for UCL and FAL claims). Here, Defendant does not challenge Plaintiff's standing, and thus the Court need not examine whether each putative class member has standing. See Ries, 287 F.R.D. at 535-36 ("[T]he majority of authority indicates that it is improper for [the court] to analyze unnamed class members' Article III standing where . . . [d]efendants do not successfully challenge the putative class representative's standing[.]") (quotation and citation omitted).

Contrary to Defendant's assertion, at the class certification stage Plaintiff need not prove that the clinical proof claims were material to all consumers of Elations or that they relied on those claims. "'[A] presumption, or at least an inference, of reliance arises [under the UCL and FAL] whenever there is a showing that a misrepresentation was material.'" Johnson, 275 F.R.D. at 287 (quoting In re Tobacco II Cases, 46 Cal.4th 298, 327 (2009)). Similarly, for a CLRA claim, "[i]f the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.'" In re Vioxx Class Cases, 180 Cal. App. 4th 116, 125 (2009) (citation omitted) (emphasis in original). The materiality determination under the FAL, UCL, and CLRA requires an objective test where plaintiff must "show that members of the public are likely to be deceived" by the alleged misrepresentations. Stearns, 655 F.3d at 1020. Therefore, the determination of materiality, and thus reliance, is determined using objective criteria that apply to the entire class and do not require individualized determination. See Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 480 (C.D. Cal. 2012) ("This objective test renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate class members' individual interaction with the product.") (citation and quotation omitted).

Defendant contends that such an inference of reliance is unwarranted here because no evidence supports it. (MCC Opp'n at 12-13.) Defendant argues that many consumers purchase Elations based on the recommendation of a doctor or friend or for reasons other than the information printed on the label. (Id.) However, Plaintiff points to evidence from Defendant's consumer survey showing that over 75 percent of Elations purchasers believed that "proven levels" of the active ingredients were worth paying for. (Wade Decl., Exh. 1.) Moreover, Plaintiff's claims of falsity concern the efficacy of the product and thus go to the heart of a customer's purchasing decision. Defendant cannot reasonably argue that a putative class

---

( . . . continued)

material misstatements of fact as to the effectiveness of a product which were displayed on the label.

member would purchase a product that does not work, regardless of who recommended it.  Thus, Plaintiff has presented a sufficient factual basis to warrant an inference of reliance among the putative class of Elations purchasers.  See Chavez, 268 F.R.D. at 378 (finding predominance and rejecting "Defendants conten[tion] that not all potential class members relied on the Santa Fe representations and may have had other reasons to buy Blue Sky beverages.").

Moreover, Defendant's concern that some putative class members were happy with Elations and thus were uninjured is unpersuasive.  "[The requirement of concrete injury is satisfied when the Plaintiffs and class members in UCL and FAL actions suffer an economic loss caused by the defendant, namely the purchase of defendant's product containing misrepresentations."  In re Google AdWords Litig., No. 5:08–CV–3369, 2012 WL 28068, at *10 (N.D. Cal. Jan. 5, 2012).  "The focus of the UCL and FAL is on the actions of the defendants, not on the subjective state of mind of the class members.  All of the proposed class members would have purchased the product bearing the alleged misrepresentations.  Such a showing of concrete injury under the UCL and FAL is sufficient to establish Article III standing."  Ries, 287 F.R.D. at 536 (N.D. Cal. 2012) (quoting and citing In re Google AdWords Litig., 2012 WL 28068 at *10).  Accordingly, the Court need not examine whether each putative class member was unsatisfied with the product in order to find that common issues predominate.[11]  See

_____

[11] Since an examination of whether each putative class members was satisfied with Elations is irrelevant to the class certification analysis, the Court does not rely on the Levine, Samuels, Schmidt, Shea, Watson, or Kolb Declarations.  In any event, the Court finds that it could not rely on these declarations because Defendant did not disclose the witnesses to Plaintiff prior to filing their declarations in opposition to the MCC.  (Doc. Nos. 80, 81.)  Plaintiff objects to these declarations because the witnesses were not listed in Defendant's Rule 26 disclosures, and "Plaintiff had no advance notice [the witnesses'] testimony would be used to oppose Plaintiff's motion for class certification."  (Doc. No. 80 at 4; Doc. No. 81 at 4.)  Federal Rule of Civil Procedure 26(a) requires the parties to disclose contact information of each individual "likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses . . . ."  Fed. R. Civ. P. 26(a)(1)(A)(i).  Rule 26(e) imposes a continuing duty on the parties to supplement this disclosure "in a timely manner."  Fed. R. Civ. P. 26(e).  "Rule 37(c)(1) gives teeth to these requirements. . . . If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Yeti by Molly, Ltd., v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).  Defendant does not dispute that it failed to include Levine, Samuels, Schmidt, Shea, Watson, and Kolb in its disclosures, nor does it contend that Plaintiff had proper notice of these witnesses prior to their use in opposition.  (Doc. Nos. 82, 83.)  Defendant has not attempted to justify the omissions as substantially justified or harmless.  Plaintiff did not have an opportunity to depose these witnesses, nor did he receive their testimony prior to filing it with the Court.  Accordingly, the Court finds that Defendant's reliance on these declarations is improper and GRANTS Plaintiff's requests to strike the declarations of Richard Levine (Doc. No. 68-5), Maxine Samuels (Doc. No. 68-6), Laurie Schmidt (Doc. No. 68-8), Donna Shea (Doc. No. 68-9), Joann Watson (Doc. No. 68-10), and Shawntel Kolb (Doc. No. 68-4) and all the exhibits attached thereto.  See In re High-Tech Employee Antitrust Litig., 289 F.R.D. 555, 585 (continued . . . )

Yokoyama v. Midland National Life Ins. Co., 594 F.3d 1087, 1089, 1094 (9th Cir. 2010)
("[T]here is no reason to look at the circumstances of each individual purchase in this case,
because the allegations of the complaint are narrowly focused on allegedly deceptive provisions
of Midland's own marketing brochures, and the fact-finder need only determine whether those
brochures were capable of misleading a reasonable consumer.").[12]

In sum, the Court agrees with Plaintiff that common questions predominate over
individual questions.  Specifically, the predominating common issues include whether Defendant
misrepresented that Elations is a "clinically-proven formula" or "clinically-proven combination,"
and whether the misrepresentations were likely to deceive a reasonable consumer.

### ii.  Damages

Defendant also contends that Plaintiff fails to present a viable damages model.  (MCC
Opp'n at 16-22.)

Plaintiff seeks full restitution of the retail price or disgorgement of Elations' net profits.
(MCC Reply at 9.)  Plaintiff contends that he will be able to prove the proper amount of
restitution by relying on documents produced by Defendant relating to net sales, profits, costs,
and the retail price of Elations.  Defendant counters that return of the full purchase price violates
restitutionary principles because Elations provided some value to consumers and that value must
be deducted from the price putative members paid.  Courts agree with Defendant and hold that
"[w]hile Plaintiffs, should they prevail, are likely not entitled to a full refund of the purchase
price, having obtained some benefit from the products purchased even if they were not as
advertised, Plaintiffs may seek some amount representing the disparity between their expected
and received value."  Astiana, 291 F.R.D. at 506.  This reduction in allowable damages,
however, is not fatal to class certification.  See Chavez, 268 F.R.D. at 379 ("At class

---

( . . . continued)
(N.D. Cal. 2013) (excluding declaration submitted in opposition to class certification because the
witness "did not appear in Adobe's initial Rule 26(a) disclosures, and appeared in its
supplemental disclosures only after Plaintiffs moved for class certification"); In re TFT-LCD
(Flat Panel) Antitrust Litig., 267 F.R.D. 583, 608 (N.D. Cal. 2010) (excluding, at class
certification, "declarations [] filed in connection with plaintiffs' reply" because "defendants have
not had the opportunity to depose the declarants").

[12] Similarly unpersuasive is Defendant's argument that consumers may have various
interpretations of the "clinically-proven" statements.  (MCC Opp'n at 14-15.)  Whether a
reasonable consumer is likely to interpret the clinically-proven statements in a deceptive manner
is a question for the jury.  See Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 532 (C.D.
Cal. 2011).  Moreover, the claim that a product is a "clinically-proven formula" has a "clearly
ascertainable meaning," namely that identifiable sources substantiate the claims of effectiveness,
and thus is not subject to boundless interpretations.  Astiana, 291 F.R.D. at 504 (finding that "the
representation 'Nothing Artificial' has a clearly ascertainable meaning").  Compare Caro v.
Proctor & Gable Co., 18 Cal. App. 4th 644, 668 (1993) (finding the term "fresh" to be subject to
multiple interpretations).

---

certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time.") (internal quotations and citation omitted). At this stage, the Court does not require Plaintiff to identify a comparable "clinically-proven" product which could serve to offset damages. See Wiener, 255 F.R.D. at 670 (finding plaintiff sufficient alleged damages where she stated they "can be calculated by subtracting the value of the product without the claimed health benefit, a uniform value to be determined based on the evidence presented at trial, from the price the particular class member is able to prove he or she paid").

Next, Defendant contends that individual questions of damage would overwhelm the common questions of fact and law. (MCC Opp'n at 19-20.) However, "the amount of damages, even if it is an individual question, does not defeat class certification." Waller v. Hewlett-Packard Co., 86 Fed. R. Serv. 3d 1279 (S.D. Cal. 2013) (citing Leyva v. Medline Industries Inc., 716 F.3d 510, 513–14 (9th Cir. 2013)). Essentially, Defendant's arguments pertaining to damages incorporate its earlier arguments concerning class members' lack of injury. For the reasons discussed above, these arguments do not defeat certification.

Since Plaintiff seeks no remedy that would require an award of damages unique to any particular class member, the Court determines that the potential recovery is not an impediment to the requirement of predominance.[13]

### b. Superiority

Rule 23(b)(3) requires the Court to find "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Considerations pertinent to this finding include:

> "(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action."

Fed. R. Civ. P. 23(b)(3)(A)-(D). The superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter–Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

Here, the damages suffered by each putative class member are not large, favoring a class proceeding. See Astiana, 291 F.R.D. at 507 ("Where a case involves multiple claims for

---

[13] In footnotes, the parties disagree over whether Plaintiff is entitled to statutory penalties under the CLRA. (MCC 23 n.19; MCC Opp'n 20 n.7.) Plaintiff has not demonstrated his eligibility for such penalties, and therefore the Court does not consider them here.

relatively small individual sums, some plaintiffs may not be able to proceed as individuals because of the disparity between their litigation costs and what they hope to recover."). It is more efficient to resolve the common questions regarding materiality and scientific substantiation in a singe proceeding rather than to have individual courts separately hear these cases. See Johns, 280 F.R.D. at 559. There are no other cases challenging Defendant's advertising claims under California's consumer protection statutes, and the proposed class involves only California purchasers, making this forum desirable for the class. (MCC at 24.) Finally, there is no evidence that this consumer class action will be difficult to manage.

Defendant does not oppose the superiority of a class action for resolving the putative class' claims. Given the large number of potential class members and small amount of the claims, the Court concludes that a class action is a superior method of resolving this case.

### 3. Recent Cases Involving Joint Supplements

Defendant points to two recent cases in this district which considered false advertising claims on glucosamine joint supplements. In Moheb v. Nutramax Labs. Inc., CV 12-3633-JFW JCX, 2012 WL 6951904 (C.D. Cal. Sept. 4, 2012), the court denied class certification for numerous reasons. Notably, plaintiff sought to certify a class consisting of "all persons resident in the State of California who purchased Cosamin DS for personal use and not for resale, at any time during the four years preceding the filing of this Complaint." Id. at *1. Unlike the class definition here, the Moheb definition did not limit the class to viewers of any particular misrepresentations. Id. ("Plaintiff alleges that she relied on all of Defendant's representations on the product's packaging in making her purchasing decision[.]"). Accordingly, the fact that the court found the class lacked commonality and was not ascertainable is not surprising, since the class definition was not limited to a manageable scope.

By comparison, the court in Cabral v. Supple, LLC, No. 5:12-cv-0085 MWF (OPx) (C.D. Cal. Feb. 14, 2013), granted class certification. Examining a similar clinical proof claim, the court rejected many of the arguments Defendant presents here, including that some customers were satisfied, not all class members were exposed to the misrepresentation, materiality varies among class members, and reliance cannot be presumed. Id. at *3-10. Defendant subsequently appealed the court's decision to certify, and it is currently pending before the Ninth Circuit. (MCC Opp'n at 24-25.) Nevertheless, the Cabral court's analysis is still relevant to the markedly similar case presented here.

Since courts in this district have come to differing conclusions regarding the viability of certification in cases involving clinical proof claims on joint supplements, there is no clear precedent guiding the outcome here.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Leave to File Fourth Amended Complaint. The parties' applications and requests to seal the 4AC are DENIED. Plaintiff shall publicly file an unredacted version of the 4AC by January 21, 2014.

The 4AC shall incorporate the limitations on the class definition and class period described above.  Pursuant to the parties' request, the 4AC is deemed served on Defendant as of December 30, 2013.

Incorporating the limitations on the class definition (i.e., shorter class period and elimination of online purchasers) and on the available damages outlined above, the Court GRANTS Plaintiff's Motion for Class Certification.  The class is certified pursuant to Rules 23(a) and 23(b)(3), Plaintiff Robert McCrary is appointed representative of the class, and the law firm of Milstein Adelman, LLP is counsel for the class.

**IT IS SO ORDERED.**