UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 13-0242 JGB (SPx)** | Date | February 25, 2016 |
| Title | *Robert McCrary v. The Elations Company, LLC et al.* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff: | Attorney(s) Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings:** **Order: (1) GRANTING Plaintiff's Motion for Final Approval of Class Action Settlement (Doc. No. 268); (2) GRANTING Plaintiff's Motion for Service Award to the Class Representative (Doc. No. 264); (3) GRANTING Plaintiff's Motion for Attorneys' Fees and Costs (Doc. No. 263); and (4) DISMISSING Plaintiff's Fourth Amended Complaint (Doc. No. 99) With Prejudice (IN CHAMBERS)**

Before the Court are: (1) Plaintiff's Motion for Final Approval of Class Action Settlement (Doc. No. 268); (2) Plaintiff's Motion for Service Award to the Class Representative (Doc. No. 264); and (3) Plaintiff's Motion for Attorneys' Fees and Costs (Doc. No. 263). The Court held a final approval hearing on February 22, 2016. For the reasons set forth below, the Court GRANTS all three motions in their entirety and dismisses this action with prejudice.

## I. BACKGROUND

### A. Procedural History

Plaintiff Robert McCrary ("Plaintiff" or "McCrary") filed his putative class action Complaint in state court on December 31, 2012. (Not. of Removal, Ex. A, Doc. No. 1.) Defendant the Elations Company, LLC ("Defendant") removed the action to this Court on February 7, 2013. (Not. of Removal.)

Plaintiff filed a First Amended Complaint on February 27, 2013. ("FAC," Doc. No. 10.) The Court granted in part Defendant's motion to dismiss, dismissing some of Plaintiff's claims with leave to amend and finding others sufficiently pleaded. (Doc. No. 21.) On May 3, 2013, Plaintiff filed a Second Amended Complaint, ("SAC," Doc. No. 23), which Defendant thereafter moved to dismiss and strike, (Doc. Nos. 26, 27). The Court granted the motions in part,

dismissing some claims with, and others without, leave to amend. (Doc. No. 36.) Pursuant to the Court's order, Plaintiff filed a Third Amended Complaint on July 25, 2013. ("TAC," Doc. No. 38.) The TAC added named Plaintiff Denzel Doucette. (Id.) Defendant answered the TAC on August 20, 2013. (Doc. No. 44.)

On October 14, 2013, Plaintiff filed a motion for class certification, (Doc. No. 48), and a week later filed a motion for leave to file a Fourth Amended Complaint, (Doc. No. 56). On January 13, 2014, the Court granted the motion to amend. ("Class Order," Doc. No. 95.) In the same order, the Court certified a class of all persons residing in the state of California who purchased Elations for personal use, and not for resale, via methods other than Defendant's website, between May 28, 2009, and December 26, 2012, when the following claims were on the packaging and/or labeling of Elations: "clinically-proven combination" and/or "clinically proven formula." (Id. at 9.)

Plaintiff filed a Fourth Amended Complaint on January 21, 2014. ("4AC," Doc. No. 99.) The 4AC eliminated Plaintiff Doucette from the case. (Id.) Defendant filed a motion to dismiss the 4AC, (Doc. No. 94), which the Court denied on March 24, 2014, (Doc. No. 117). Defendant answered the 4AC on April 7, 2014. (Doc. No. 118.)

On June 3, 2014, the parties stipulated to amend the class definition, expanding the dates between which class members may have purchased Elations to between May 28, 2009 and September 30, 2013. (Doc. No. 132.) The Court granted that stipulation to amend the class definition the following day. (Doc. No. 133.)

Defendant moved to decertify the class on August 11, 2014, (Doc. No. 150), and to exclude Plaintiff's damages expert, Dr. David Sharp, (Doc. No. 151). Plaintiff later moved to exclude two of Defendant's experts: Russell W. Mangum III, (Doc. No. 188), and Bruce R. Isaacson, (Doc. No. 189). In an order dated December 2, 2014, the Court denied Defendant's motions to exclude Sharp and decertify the class, denied Plaintiff's motion to exclude Isaacson, and granted in part Plaintiff's motion to exclude Mangum. (Doc. No. 210.)

On September 8, 2014, Defendant filed a motion for partial summary judgment as to Plaintiff's claim for injunctive relief. (Doc. No. 165.) That same day, Plaintiff also moved for summary judgment. (Doc. No. 166.) The Court granted Defendant's motion for partial summary judgment in an order dated December 9, 2014, granting summary judgment as to Plaintiff's claim for injunctive relief. (Doc. No. 214.) In that order, the Court also denied Plaintiff's motion for summary judgment. (Id.)

On February 13, 2015, Plaintiff filed a notice of settlement and a joint stipulation to vacate the trial dates. (Doc. No. 257.) The Court approved the stipulation and vacated the remaining trial and pretrial dates. (Doc. No. 258.) As ordered by the Court on June 17, 2015, Plaintiff filed a motion for preliminary approval of class action settlement on August 3, 2015. (Doc. No. 261.) In the motion, Plaintiff presented a proposed settlement agreement ("Settlement Agreement") and sought certification of an expanded class ("Settlement Class") encompassing "[a]ll persons who purchased Elations from May 28, 2009 through the date of the Preliminary Approval Order of this Settlement at a retail location in the State of California, for personal use and not for resale." (Id. at 7 (emphasis added).) In other words, Plaintiff sought certification of

a class including all California purchasers of Elations since May 28, 2009 and not just those who purchased Elations with the relevant clinically-proven claims on the package. (Id. at 12.)

On August 31, 2015, the Court held a preliminary approval hearing. On the same day, following the hearing, the Court issued an order granting Plaintiff's motion. ("Preliminary Approval Order," Doc. No. 262.) In the order, the Court conditionally certified the Settlement Class solely for the purpose of settlement, appointed Plaintiff as the Settlement Class Representative, appointed the law firm of Milstein Adelman LLP as Class Counsel, authorized the retention of Kurtzman Carson Consultants as the "Settlement Administrator," and ordered dissemination of notice to the Settlement Class in the manner described in the Settlement Agreement. (Id. at 15.)

On November 16, 2015, Plaintiff filed: (1) a Motion for Attorneys' Fees and Costs (Doc. Nos. 263) and a supporting declaration by Gillian L. Wade ("Wade Fee Decl.," 263-1); and (2) a Motion for Service Award to the Class Representative (Doc. No. 264) and a supporting declaration by Plaintiff ("Pl. Decl.," Doc. No. 264-1).

On January 25, 2016, Plaintiff filed his Motion for Final Approval of Class Action Settlement, seeking: (1) final approval of the Settlement Agreement; (2) final certification of the Settlement Class; (3) authorization for the Settlement Administrator to administer settlement benefits to Settlement Class members; and (4) entry of final judgment and dismissal of this action with prejudice. (Doc. No. 268.) In support, Plaintiff filed: (1) a declaration by Gillian L. Wade ("Wade Decl.," Doc. No. 268-1); and (2) a declaration by Jay Geraci ("Geraci Decl.," Doc. No. 268-2).

Defendant has not opposed Plaintiff's motions.

On February 22, 2016, the Court held a final approval hearing. No Settlement Class Members appeared at the hearing.

### B. Factual Allegations in the 4AC

The 4AC states four claims for relief: (1) violation of the Consumer Legal Remedies Act ("CLRA") under California Civil Code Section 1750; (2) violation of the False Advertising Law ("FAL") under California Business and Professions Code Section 17500; (3) violation of the unfair and fraudulent business practices prongs of the California Unfair Competition Law ("UCL"); and (4) violation of the unlawful business practices prong of the UCL.

The 4AC alleges that Defendant markets, distributes, and sells the Elations dietary joint supplement beverage and promotes it as "clinically proven" to have joint health benefits. (4AC ¶ 1.) However, Plaintiff contends that Elations is not clinically proven to have any impact on joints and that the statement on Elations' label was therefore false. (4AC ¶ 2.)

Plaintiff McCrary suffers from arthritic joint pain. (4AC ¶ 74.) Plaintiff alleges that, while shopping at a CVS pharmacy in August 2011, he reviewed the packaging of Elations, which included claims that Elations contains a "clinically-proven formula" and a "clinically-proven combination" of ingredients. (4AC ¶ 75.) Relying on these claims, he purchased Elations and used it as directed; however, he did not experience the advertised benefits. (4AC

¶¶ 76-77.) Plaintiff asserts that he would never have purchased the product had he known of its ineffectiveness. (4AC ¶ 76.) Plaintiff brought this action on behalf of a putative class of similarly situated persons. (4AC ¶ 17.)

### C. The Settlement Agreement

#### 1. Settlement Terms

In support of his motion for preliminary approval of class action settlement, Plaintiff submitted a copy of the parties' Settlement Agreement as Exhibit A to the Declaration of Gillian L. Wade ("Wade Decl."). ("Settlement Agreement," Wade Decl., Ex. A, Doc. No. 261-1.) In the Settlement Agreement, Defendant continued to deny the claims asserted in the 4AC. (Id. § I(z).) Nevertheless, Defendant agreed to pay a total settlement amount of $1.35 million to resolve Plaintiff's claims and those of Settlement Class members. (Id. § IV(B)(1).) In exchange, Plaintiff and the Settlement Class members agreed to release "all actions, claims, causes of action, demands, rights, and suits of whatever kind of nature that arose" between May 28, 2009 and the date of the preliminary approval order against Defendant.[1] (Id. §§ II(d), (r), (y), VIII(D).) The Agreement defines the Settlement Class as follows:

> All persons who purchased Elations from May 28, 2009 through the date of the Preliminary Approval Order of this Settlement at a retail location in the State of California for personal use and not for resale. Excluded from the Settlement Class are: (a) employees, officers and directors of Defendant; (b) persons who timely and properly exclude themselves from the Settlement; and (c) the Court, the Court's immediate family and Court staff.

(Id. § I(w).)

The Settlement Agreement provided for a cash recovery to members of the Settlement Class. (Id. § IV(A).) Settlement Class Members who had a receipt for their purchases of Elations during the class period "w[ould] be entitled to a refund of $6.00[ ] per six pack for every six pack for which they have a valid proof of purchase" for up to three six packs. (Id. § IV(A)(1).) Settlement Class Members without receipts "w[ould] be entitled to a refund of $6.00[ ] per six pack of Elations during the class period" for up to two six packs per household. (Id. § IV(A)(2).)

The Settlement Agreement also indicated that each Settlement Class Member's award would be reduced if insufficient funds remained after the Settlement Administrator costs, costs and expenses awarded to Class Counsel, attorneys' fees, and a service award to Plaintiff. (Settlement Agreement §§ IV(B)(1), IV(C)(1).) The total amount available to pay eligible Settlement Class Member claims would be at least $200,000. (Id. § IV(C)(1).) In the alternative, if excess funds remained after those expenses, costs, and awards were paid, each

---

[1] However, Settlement Class members would not release any claims for personal injury and for violations of state or federal employment statutes. (Agreement § II(d).)

Settlement Class Member's award would be proportionately increased on a per six-pack basis. (Id. § IV(C)(2).)

Defendant agreed not to oppose Plaintiff's requests for (i) up to $585,000 in Class Counsel's costs and actual expenses incurred to date, and (ii) an award of attorneys' fees up to $362,000. (Id. § VIII(A).) Moreover, Defendant would not oppose an incentive award of up to $5,000 for Robert McCrary, as the representative plaintiff. (Id. § VIII(B).) In total, the costs, expenses, attorneys' fees, and settlement administration costs would not exceed $1,150,000. (Id. § VIII(A).)

### 2. Claims Process

The Settlement Agreement proposed that the Court appoint Kurtzman Carson Consultants ("KCC") as the Settlement Administrator to provide notice to class members and administer the claims process. (Settlement Agreement § II(u).) Class notice would encompass both direct notice and notice by publication. (Id. §§ V(B), (C).) First, KCC would mail notice within fifteen days after the Court's preliminary approval of the Settlement Agreement to those Settlement Class members for whom the parties possessed a mail or email address. (Id. § V(B).) Second, within sixty days after preliminary approval, KCC would cause notice to be published in five consumer magazines, a local newspaper, and internet banner ads.[2] (Id.) Moreover, KCC would update the settlement website with the class notice, claim form, and other relevant documents shortly after preliminary approval. (Id. § V(D).)

Settlement Class members could obtain a cash payment by submitting a claim form by mail or electronically at least forty-five days before the Court's final approval hearing. (Agreement §§ IV(A)(4), IV(F)(2).) At least twenty-one days before the Court's final approval hearing, KCC was to send a notice explaining the rejection of any claim and allowing the Settlement Class member until five days before the final approval hearing to correct any identified deficiencies. (Id. § IV(D)(1).) KCC would send payment directly to each eligible Settlement Class member no later than sixty days after the settlement was finalized (i.e. after the time to appeal the Court's final approval order has expired and/or all appeals are resolved). (Id. § II(j), IV(D)(2).)

In the alternative, purchasers of Elations could request exclusion from the Settlement Class by submitting a completed and signed Request for Exclusion form at least forty-five days before the Court's final approval hearing. (Agreement § V(F)(1).) In addition, a Settlement Class member could object to or oppose the settlement and/or the fee and cost application by filing a written objection and sending it to Class Counsel at least forty-five days before the Court's final approval hearing. (Id. § VII(B).)

---

[2] Plaintiff's motion for preliminary approval indicated one-time notices would appear in the California state editions of Arthritis Today, National Geographic, People, Sunset, and Parade magazines. (Doc. No. 261 at 10.) In addition, notice would appear once-per-week for four consecutive weeks in the Redlands Daily Facts newspaper. (Id. at 10-11.) As for internet notice, internet banners would appear on Facebook and Run of Network over a two- to three-week period. (Id. at 11.)

### D.  Preliminary Approval

On August 31, 2015, following a hearing, the Court granted preliminary approval of the Settlement Agreement.  (Doc. No. 262.)  The Court approved the class notice process set forth in the Settlement Agreement, ordered dissemination of notice to the Settlement Class, and set December 30, 2015 as the deadline for Settlement Class Members to file claims, object, or opt-out.  (Id. at 15.)

### E.  Performance of the Settlement Agreement

KCC has provided members of the Settlement Class with notice pursuant to the claims process set forth in the Settlement Agreement.  On September 8, 2015, KCC updated the settlement website to provide information about the settlement and to allow Settlement Class Members to file online claims and to view court documents related to the case.  (Geraci Decl. ¶ 8.)  On or about September 16, 2015, KCC provided notice of the Settlement Agreement to 2,424 Settlement Class members whose contact information was known to the parties: KCC mailed notice of the Settlement Agreement to 623 individuals and e-mailed the notice to 1,801 individuals.[3]  (Id. ¶ 11.)  On December 18, 2015, KCC sent a reminder notice by e-mail to 1,801 individuals.  (Id. ¶ 12.)

Moreover, KCC published the notice of the Settlement Agreement in advertisements in California state editions of five consumer magazines: Arthritis Today, National Geographic, People, Sunset, and Parade magazines.  (Id. ¶ 10.)  KCC also published notice of the Settlement Agreement in four placements in the Redlands Daily Facts newspaper: each placement appeared once a week for four consecutive weeks in September and October 2015.  (Id.)  Lastly, KCC published 6 million unique internet banner impressions geographically targeted to California adults 45 years of age or older on a variety of websites, in September and October 2015.  (Id.)

KCC reports that not a single member of the Settlement Class has objected or opted-out from the Settlement Agreement.  (Id. ¶¶ 19-20.)  Moreover, Plaintiff reports KCC has received 3,405 valid claims and two of these claims have included valid proofs of purchase.  (Id. ¶ 21.)  Based on the claims received, the anticipated pro rata per six pack is estimated to be $29.51 per six pack, with an average of $59.02 per claimant for those who did not submit any form of proof of purchase and $88.53 for the two claimants who submitted a proof of purchase.  (Id. ¶ 22.)  According to KCC, the total distribution amount for claims will be $201,022.12.  (Id.)

---

[3] KCC updated the mailing addresses of many of these individuals prior to mailing the notices, using the U.S. Postal Service's National Change of Address database.  (Geraci Decl. ¶ 5.)  Many of the notices mailed were returned to KCC by the U.S. Postal Service, with or without a forwarding address.  (Id. ¶¶ 13-14.)  KCC mailed notices to individuals for whom a forwarding address was provided and conducted address searches for individuals for whom no forwarding addresses was provided.  (Id.)  KCC then mailed notices to any new addresses it discovered.  (Id.)

KCC also estimates the total costs for administration of the settlement will be $198,000.[4] (Id. ¶ 23)  KCC estimates there will be an "overage" of $17.88: Plaintiff has requested this overage be added to the amount tendered to KCC as payment for settlement administration costs. (Geraci Decl. ¶ 22; Final Approv. Mot. at 23 n.16.)

## II.  LEGAL STANDARD

### A.  Class Action Settlement

Class action settlements must be approved by the Court.  See Fed. R. Civ. P. 23(e).  Whether to approve a class action settlement is "committed to the sound discretion of the trial judge."  Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  A strong judicial policy favors settlement of class actions.  See id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness.  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement.  See id.  "The settlement must stand or fall in its entirety."  Id.

In order to approve the class action settlement herein, the Court must conduct a three-step inquiry.  See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012).  First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act.  Id.  Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied.  Id.  Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(3).  Id.

### B.  Attorneys' Fees

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2) of the Federal Rules of Civil Procedure.  While the rule specifies that requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees.  "Rather, [Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award . . . [in order to] give[ ] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award."  MRO Commc'ns, Inc. v. AT&T, 197 F.3d 1276, 1281 (9th Cir. 1999).

---

[4] KCC also charged Plaintiff $277,037 following preliminary approval of the Settlement Agreement for the costs of providing notice of the settlement to Settlement Class Members.  (Wade Decl. ¶ 38.)  Plaintiff seeks to recover such costs alongside other legal fees incurred.

In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees. See Alba Conte and Herbert B. Newberg, Newberg on Class Actions, § 14.1 (4th ed. 2005) ("Two significant exceptions [to the "American Rule"] are statutory fee-shifting provisions and the equitable common-fund doctrine"). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h). Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

## III. DISCUSSION

### A. Class Action Fairness Act ("CAFA")

When settlement is reached in certain class action cases, CAFA requires as follows:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official. . . .

28 U.S.C. § 1715(b). The statute provides detailed requirements for the contents of such a notice. Id. A court is precluded from granting final approval of a class action settlement until the notice requirement is met:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

At the final approval hearing, counsel for both parties informed the Court that notice had been provided pursuant to 28 U.S.C. § 1715(b). Accordingly, the Court finds that the notice requirements of 28 U.S.C. § 1715 have been satisfied.

### B. Rule 23

#### 1. Rule 23(a) and (b)

In its Preliminary Approval Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). (Prelim. App. Order at 6-8). Accordingly, the Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." Adoma, 913 F. Supp. 2d at 974; see also Harris v. Vector Marketing, No. C–08–5198, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it

previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litigation, Nos. CV 04–2147–PHX–JAT, CV 04–2204–PHX–JAT, CV 04–2334–PHX–JAT, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012).  Here, the Settlement Class has not changed since it was conditionally certified.  All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Settlement Class.

### 2. Rule 23(c)(2) Notice Requirements

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement.  Fed. R. Civ. P. 23(e)(1).  In its Preliminary Approval Order, the Court approved the notice sent to potential Settlement Class Members.  (Prelim. App. Order at 14-15.)  Notice of the settlement was: (1) timely sent via mail and e-mail to potential class members; and (2) published in five consumer magazines, a local newspaper, and internet banner ads.  (Geraci Decl. ¶¶ 8-12.)  Notices mailed or e-mailed to Settlement Class members and published in the magazines and newspaper provided information on the settlement terms, the final approval hearing, and objecting, and opting out.[5]  (See id., Ex. A-D, F-G.)  The internet banner ads also provided a brief notice of the settlement.  (See id., Ex. E.)  The Court therefore finds that notice to the Settlement Class was adequate.

### C. Fair, Reasonable, and Adequate Under Rule 23(e)

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982).  The Court's inquiry is procedural in nature.  Id.  Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The Court held a final approval hearing on February 22, 2016.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

---

[5] In its Preliminary Approval Order, the Court instructed the parties to specify the time of the Court's final approval hearing (i.e. 9:00 a.m.) on notices that were either sent to Settlement Class Members or published.  (Prelim. App. Order at 14.)  The notices sent to the parties do not appear to have complied with the Court's instruction.  Nonetheless, given that the notices directed potential Settlement Class Members to the settlement website and the website did list the time of the hearing, the Court finds the notices satisfied Rule Rule 23(c)(2)(B).

  (1) the strength of the plaintiff's case;
  (2) the risk, expense, complexity, and likely duration of further litigation;
  (3) the risk of maintaining class action status throughout the trial;
  (4) the amount offered in settlement;
  (5) the extent of discovery completed, and the stage of the proceedings;
  (6) the experience and views of counsel;
  (7) the presence of a governmental participant; and
  (8) any opposition by class members.

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exclusive and a court may balance and weigh different factors depending on the circumstances of each case. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1. Strength of the Plaintiff's Case

The initial fairness factor addresses Plaintiff's likelihood of success on the merits. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964–65 (9th Cir. 2009). In determining the probability of Plaintiff's success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965.

Here, Defendant continues to deny liability. (Settlement Agreement § I(z).) Specifically, Defendant contends its representations regarding Elations were not misleading or material to reasonable consumers under California law. (Final Approv. Mot. at 12-13.) Moreover, Defendant challenged opinions to the contrary offered by Plaintiff's experts. (Id.) Plaintiff disagrees, but recognizes that a trier of fact could find for Defendant on these issues. (Id.)

Given the challenges that could potentially be faced in continued litigation over such issues, the Court finds this factor weighs in favor of approval. See Barbosa v. Cargill Meat Solutions Corp., 1:11-CV-00275-SKO, 2013 WL 3340939, at *12 (E.D. Cal. July 2, 2013) ("Plaintiffs' likelihood of success appears to have been properly accounted for in the settlement amount.").

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

Settlement occurred late in this action, after the parties' motions for summary judgment and four weeks before trial. (Wade Decl. ¶ 12.) At the very least, trial would have been necessary for the Settlement Class to obtain a remedy and may have resulted in judgment adverse to the Settlement Class. An appeal would have prolonged the litigation even further. Therefore, the settlement avoided further protracted and expensive litigation.

Accordingly, the Court finds that this factor weights in favor of settlement approval.

### 3. Risk of Maintaining Class Action Status Throughout the Trial

Because the Court is not aware of any risks to maintaining class-action status throughout trial, this factor is neutral. Barbosa, 2013 WL 3340939 at *13; see also In re Veritas Software Corp. Sec. Litig., No. 03–0283, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005) (vacated in part on other grounds, 496 F.3d 962 (9th Cir. 2007)) (favoring neither approval nor disapproval of settlement where the court was "unaware of any risk involved in maintaining class action status"); Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 489 (E.D. Cal. 2010) (finding that there were no facts that would defeat class treatment, the factor was considered "neutral" for purposes of final approval of class settlement).

### 4. Amount Offered in Settlement

The parties agreed to an aggregate settlement amount of $201,022 to be paid to the 3,405 Settlement Class Members who filed valid claims. (Final Approv. Mot. at 15-16.) Based on the claims received, the anticipated pro rata per six pack is estimated to be $29.51 per six pack, with an average of $59.02 per claimant for those who did not submit any form of proof of purchase and $88.53 for the two claimants who submitted a proof of purchase. (Geraci Decl. ¶ 21.) This represents a substantial recovery for the class members.

Class Counsel estimates that the maximum amount of recovery that the Settlement Class could have obtained absent the settlement ranged from $279,259 to $2.2 million. (Final Approv. Mot. at 15.) An aggregate recovery of $201,022 roughly amounts to between 9% and 71% of the damages the Settlement Class could have recovered. (Id.) This degree of recovery is consistent with amounts routinely found to be fair and reasonable. See, e.g., In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. Jan. 9, 2008) (approving settlement that constituted 6% of maximum potential damages); In re Heritage Bond Litig., No. 02-ML-1475-DT, 2005 WL 1594389, at *8-9 (C.D. Cal. Jun. 10, 2005) (median amount recovered in securities class action settlements ranged between 2.2% to 2.8% between 2002 and 2006).

In sum, this factor weighs toward final approval.

### 5. Extent of Discovery Completed & Stage of the Proceedings

This factor requires that the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239.

By the time the parties executed the Settlement Agreement, this action had been actively litigated for three years. (Wade Decl. ¶ 17.) Before reaching a settlement, the parties engaged in extensive discovery: Plaintiff propounded 112 document requests, 22 interrogatories, 10 requests for admission, and document subpoenas to 23 third parties. (Id. ¶ 7.) Plaintiff's counsel also deposed seven witnesses and reviewed thousands of pages of documents. (Id.) In particular, Plaintiff consulted experts and had gathered data concerning the size of the then-

certified class and their possible recovery on the claims at issue. (Id. ¶¶ 8, 24.) Moreover, both parties had filed motions for summary judgment and had prepared for trial.

Based on these facts, the Court finds discovery was sufficiently advanced to allow the parties to make an informed decision about settlement. See DIRECTV, Inc., 221 F.R.D. at 527 ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.") (quoting 5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed.).  Accordingly, this factor favors settlement.

### 6. Experience and Views of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. See DIRECTV, Inc., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted).  This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995).

Class Counsel has significant experience litigating and settling consumer protection class actions. (Wade Decl. ¶ 34.) The Court accords weight to Class Counsel's recommendation that the Court approve the Settlement Agreement, since Class Counsel is familiar with this litigation and its likelihood of success during litigation and trial. Class Counsel understood the complex risks and benefits of settlement and concluded that the Settlement constituted a reasonable recovery that confers a substantial benefit on the Class members. (Id. ¶¶ 21-22.)

Moreover, settlements are afforded a presumption of fairness if the negotiations occurred at arm's length. 4 Newberg on Class Actions § 11.41 (4th ed. 2013). Here, the parties submit that the Settlement Agreement is the result of vigorously contested, arm's length negotiations. (Final Approv. Mot. at 18-19); see Rodriguez, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . .").

Therefore, this factor weighs in favor of approval.

### 7. Presence of a Governmental Participant

No governmental entity is present in this litigation. (Wade Decl. ¶ 27.) Therefore this factor favors approval.

### 8. Any Opposition by Class Members

The existence of overwhelming support for a settlement agreement by the class lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. DIRECTV, Inc., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a

proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

No Class members opted-out or objected to the Settlement Agreement. (Geraci Decl. ¶ 19-20.) Given the lack of opt-outs and objections, the Court finds that this factor weighs in favor of final approval.

After considering all of the relevant factors, the Court concludes that the relevant factors weigh in favor of approval: seven factors favor approval and one is neutral in the analysis. After reviewing all of the evidence presented and the motion papers, the Court finds that the Settlement Agreement is "fair, reasonable and adequate to all concerned parties." Ficalora v. Lockheed Cal. Co., 751 F.2d 995, 996 (9th Cir. 1985). Therefore, the Court approves the Settlement Agreement.

### D. Attorneys' Fees and Costs

#### 1. Attorneys' Fees

Class Counsel also requests approval of its fees and costs. Courts are obliged to ensure that the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on an amount. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

In diversity actions, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees. See Mangold v. California Pub. Utilities Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995). Under California law, the primary method for determining the amount of reasonable attorneys' fees is the lodestar method. In re Consumer Privacy Cases, 175 Cal. App. 4th 545, 556-57 (2009). The lodestar is calculated by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. Id. A court may increase or decrease that amount by applying a positive or negative multiplier based on, among other factors, the quality of representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented. Id.

In cases in which the class benefit can be monetized with a reasonable degree of certainty, a percentage of the benefit approach may be used to cross-check the lodestar calculation. Id. at 557-58 (citing Lealao v. Beneficial California, Inc., 82 Cal.App.4th 19, 26–27, 97 Cal.Rptr.2d 797 (2000)). California courts use this percentage cross-check not only in conventional common fund cases but also in cases in which the defendant creates a common fund for the benefit of the class members and agrees to pay attorneys' fees separately. See Lealao, 82 Cal. App. 4th at 35-37. Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33% and has endorsed the federal "benchmark" of 25%. In re Consumer Privacy Cases, 175 Cal. App. 4th at 556 n.13.

Here, Class Counsel estimates that it devoted approximately 4,489.75 hours to litigating this case at hourly rates ranging from $150 per hour for paralegal work and $300 to $650 for attorney work, totaling $2,180,600 in fees.[6] (Wade Fee Decl. ¶¶ 53-54.) Those hours were spent investigating the relevant facts, interviewing Plaintiff, communicating with experts, drafting the complaint and subsequent pleadings, propounding discovery requests, gathering and reviewing documents, engaging in settlement negotiations, and drafting the settlement agreement, among other things. (Id. ¶ 60.) These hours include all work devoted to the case until the submission of Plaintiff's Motion for Final Approval of Class Action Settlement and does not include time spent attending the hearing on the Motion or dealing with any administrative matters that may arise thereafter. (Id. ¶ 62.) The $362,000 in requested fees represents less than 20% of Class Counsel's estimated lodestar of $2,180,600. Furthermore, the $362,000 requested constitutes 26.82% of the total settlement amount and is thus reasonable under the 25% common fund "benchmark." See In re Consumer Privacy Cases, 175 Cal. App. 4th at 556 n.13. The overall requested amount of attorneys' fees appears reasonable.

Accordingly, the Court approves the suggested award of attorneys' fees.

**2. Costs**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h); see Trans Container Servs. v. Sec. Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." Rutti v. Lojack Corp., Inc., No. SACV 06–350 DOC (JCx), 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

The Court preliminarily approved litigation costs in an amount up to $585,000. (Prelim. App. Order at 13.) Class Counsel now seeks $583,960.51 in costs. (Fees Mot. at 12.) Class Counsel provides an itemized breakdown of the expenses in this case, which include clerk fees, filing fees, court reporter charges and attorney service, photocopies, telephone and conference calls, postage and overnight delivery, mediation fees, travel expenses for six depositions, expert witness fees, and the initial costs of having KCC provide notice of the settlement to Settlement Class Members. (Wade Fee Decl. ¶¶ 68-69.) All of these expenses are typically recoverable in litigation. Cf. In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding similar categories of expenses reasonable in a class action settlement). Moreover, while the total amount of such costs make up a substantial portion of the total settlement amount, the Court finds Class Counsel's request to be reasonable because this case proceeded to the verge of trial and included heavy motions practice. The Court therefore approves the suggested amount for costs.

---

[6] To show these hourly rates are reasonable, Class Counsel has presented a survey of attorneys' fees provided by the National Law Journal in 2012, which includes fees charged by California firms with offices in Los Angeles. (Wade Fee Decl., Ex. 1.)

### E. Class Representative Service Award

The trial court has discretion to award incentives to the class representatives. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); Pelletz, 592 F. Supp. 2d at 1329. The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995). Here, Plaintiff requests an incentive award of $5,000, pursuant to the terms of the Settlement Agreement. (Service Award Mot. at 2; Settlement Agreement § VIII(B).)

No class members objected to Plaintiff's requested service award of $5,000. Moreover, Plaintiff has fully participated in this case, including by investigating his claims, conferring with Class Counsel, reviewing documents, responding to written discovery, reviewing settlement documents, and sitting for a four-hour deposition. (Pl. Decl. ¶¶ 6, 8-9, 11.) Plaintiff estimates he has spent approximately seventy-seven hours on this case. (Id. ¶ 12.) Incentive awards of comparable amounts are "traditionally considered reasonable in similar jurisdictions." Elliott, 2014 WL 2761316, at *11 (noting awards of $5,000 are traditionally considered reasonable); see also Custom LED, LLC v. eBay, Inc., No. 12-CV-00350-JST, 2014 WL 2916871, at *10 (N.D. Cal. June 24, 2014) (approving $7,500 incentive award from $3,230,000 total settlement amount). Accordingly, the Court finds the service award requested to be reasonable.

## IV. CONCLUSION

For the reasons stated above, the Court:

(1) GRANTS final approval of the Settlement Agreement;
(2) GRANTS the request for attorneys' fees and AWARDS Class Counsel attorneys' fees in the amount of $362,000 from the gross settlement amount;
(3) GRANTS the request for costs and AWARDS Class Counsel costs in the amount of $583,960.51 from the gross settlement amount;
(4) GRANTS the request for settlement administration fees and AWARDS Kurtzman Carson Consultants administration fees in the amount of $198,017.88 from the gross settlement amount;
(5) GRANTS the request for a service award and AWARDS a total of $5,000 to Plaintiff Robert McCrary; and
(6) DISMISSES the Fourth Amended Complaint WITH PREJUDICE.

The Court orders that such judgment be entered.

**IT IS SO ORDERED.**